OPINION
This is an appeal by F H Partnership of the Miami County Common Pleas Court's judgment affirming the Bethel Township Board of Zoning Appeals decision to deny F H a conditional use certificate.
The facts underlying this appeal are set out in the appellant's brief and are not contested by the appellee.
F H is the owner of a 32.68 acre tract of land located on State Route 202, in Bethel Township, Miami County, Ohio. Through the services of Michael Cozatt, a licensed civil engineer and surveyor, F H desired to subdivide said acreage into six single-family residential lots ranging in size from 2.376 acres to 11.2242 acres. As a result of the natural contour of the 32.68 acre tract, the proposed building sites were planned to be located on the highest elevation point on each lot. Along the rear of the 32.68 acre tract (the eastern portion) was a large swail, which was subject to a flooding easement granted to the Miami Conservancy District.
F H's 32.68 acre tract was zoned as F-1 (Flood Plain). As a result of this zoning classification, F H was required by the Bethel Township Zoning Regulations to obtain a Conditional Use Certificate before it could build any single-family dwellings on said land. Article 13 of the Bethel Township Zoning Resolution sets forth that single-family dwellings may only be built on property zoned F-1 (Flood Plain District) upon the granting of a Conditional Use Certificate. Likewise, Section 20.08(4) of the Bethel Township Zoning Resolution sets forth the manner in which the BZA is to determine whether a Conditional Use Application is authorized under the terms of the Resolution or whether the Conditional Use Application should be denied for not being in harmony with the intent and purpose of the Resolution. Specifically, Section 20.08 (4)(C)(bb) of the Resolution provides that the BZA shall determine whether the "granting of the conditional use will not adversely affect the neighborhood in which the conditional use to be located."
On April 23, 1998, F H filed its application for a conditional use certificate requesting approval to subdivide the tract into six single-family dwellings.
The initial hearing on F H's application came before the BZA on May 20, 1998. At the hearing, F H submitted evidence indicating that each of the six driveways to the six proposed building sites met the County and State minimum line of sight distance requirements. On behalf of F H, Michael Cozatt testified that he performed a field analysis as to the line of sight distance to the north and to the south on State Route 202 from the driveway approach on each of the six proposed driveways. Mr. Cozatt submitted his written analysis to the BZA at said hearing. The testimony of Mr. Cozatt that each of the proposed driveways far surpassed the minimum Miami County and State of Ohio line of sight distance requirements, which are intended to govern safety on state highways, went uncontested.
At the May 20, 1998 hearing, when F H was intending to utilize six driveways for the six proposed lots, Kingham first testified in opposition to F H's Conditional Use Application. Kingham testified regarding his concerns about the safety considerations of having six driveways coming onto State Route 202. Kingham further testified of his concerns about potential danger to a school bus which may have to stop to pick up children on State Route 202. Kingham further stated that there are only 13 houses on a five mile stretch of State Route 202, between State Route 571 and State Route 202. (Transcript, Volume I, page 25).
A second neighbor, Appellee Larry Grazulis testified in opposition to F H's Application. Grazulis initially expressed his concern regarding the existing amount of traffic on State Route 202, and that F H's property is on a "major curve" that you cannot see around. Specifically, Grazulis attacked the credibility of Mr. Cozatt's line of sight distance analysis by suggesting that his analysis must have occurred during the winter time when the leaves of trees and bushes would not obscure the view. (Transcript, Volume I, page 31-35) In response, Michael Cozatt testified that he performed his line of sight distance calculations for purposes of his analysis on May 13, 1997, when the trees and shrubs were in full bloom. In fact, Mr. Cozatt submitted his worksheet as an exhibit before the BZA, which confirmed the date of the analysis, thereby discrediting the testimony by Grazulis regarding the sufficiency of Michael Cozatt's line of sight distance calculations. (Transcript, Volume I, pg. 51-52).
Over the continuing objections of F H Grazulis then testified what other people had allegedly told him. Specifically, Grazulis testified that Phil Stormer, of the Ohio Department of Transportation, told him that adding six more driveways on a curve on State Route 202 is an unsafe condition. Grazulis further reported that Stormer told him that there were a number of accidents at the intersection of State Route 202 and State Route 571 and that traffic was going to increase on State Route 202, which will create more risk of vehicles pulling out on the roadway. (Transcript, Volume I, pg. 35-38).
 Grazulis then testified that Kate Kissinger, of the Ohio Department of Transportation, told him of the 1974 traffic statistics on State Route 202, including that 3,407 cars travel on said road during a 24 hour day. Grazulis further testified that Kissinger told him that she estimated that there has been a 30 percent increase in the number of vehicles traveling on said road. Lastly, Grazulis stated that Kissinger told him that traffic would increase during certain peak times, such as holiday events in neighborhood communities Tipp City, Huber Heights and Troy) and from a motor cross place which is located in Staunton Township, Miami County. (Transcript, Volume I, pg. 39-40).
Grazulis further testified what Mrs. Polstan, from the Zoning Department in Huber Heights, and Mr. Dando, the Planning Law Director for Tipp City, had told him. Their hearsay testimony concerned whether government entities other than Bethel Township require separate access roads to residential developments, as opposed to the six driveways initially requested by F H. Both Polstan and Dando were reported as telling Grazulis that these governmental bodies do not permit direct access to major thoroughfares for single-family residential uses, but instead access roads are required. After hearing testimony regarding F H's Conditional Use Application at the May 20, 1998 hearing, Chairman Lee requested each BZA member comment on those factors which should be considered by the Board. Board Member Senseman commented that the proposed traffic problem could be corrected by making one exit for all properties, which would eliminate entrance and exit problems on the state route. (Transcript, Vol. I, pg. 82-83). Board Member Biggs echoed the same concerns as Mr. Senseman and commented that his major concern was with the amount of traffic on the road, combined with the number of driveways in such a small area. Board Member Studebaker did not express any concerns which related to traffic congestion on the roadway. Board Member Fisher set forth that her primary concern was with the traffic of State Route 202 when combined with six new driveway entrances to the public road. Chairman Lee was last to issue comments; Mr. Lee stated that his major concern was traffic and the placement of six driveways in close proximity to each other, which may create a safety hazard. After the Board Members' comments, the Board agreed to table the matter to allow F H to gather more information for purposes of alleviating the Board's concerns regarding driveway safety issues.
Following the May 20, 1998 hearing, F H amended its Application to reduce the number of driveways from the 32 acre tract from six to two. In its amended plan, F H utilized two existing driveway approaches which had already been approved for ingress and egress from the 32 acre tract. F H's amended plan provided that a driveway easement (service road) would be utilized with two entrances onto State Route 202, one for each three lots.
At the June 18, 1998 hearing before the BZA, Michael Cozatt testified regarding the limiting of driveway entrances to the six proposed lots to the two existing driveway entrances. Mr. Cozatt further testified that these two driveway entrances clearly surpassed the minimum line of sight distance requirements of Miami County and the Ohio Department of Transportation. Grant Kerber, an attorney representing several of the neighbors, testified in opposition to F H's Application. On behalf of the neighbors, Kerber revised the arguments regarding the neighbors' previous concerns of having six driveways in close proximity to each other entering upon State Route 202. Instead, Kerber argued that the same amount of traffic will continue to enter and exit onto State Route 202 from F H's six lots, whether or not there is one driveway or six driveways. (Transcript, Volume II, pg. 19-22).
After hearing the testimony, but prior to voting on F H's Conditional Use Application, Chairman Lee asked whether any of the members of the BZA desired to make any comments. Mr. Studebaker was the first board member to comment, and he stated that he was in favor of the two driveways as a way to reduce the areas of access to the public roadway. Mr. Biggs made no comments. Mr. Senseman expressed no concerns regarding the traffic problems. Ms. Fisher expressed certain concerns regarding F H's Application, but said concerns did not involve traffic considerations. Lastly, Mr. Lee commented regarding his concerns, none of which involved problems of traffic on the public roadway. The BZA then entertained a Motion to approve F H's Conditional Use Application, which was seconded. The Motion was defeated by a 3 to 2 margin, with Mr. Lee, Ms. Fisher and Mr. Studebaker voting against F H's Application.
Although the BZA did not specifically state the reasons for not approving F H's Conditional Use Application, Janice Royce, the Zoning Inspector for Bethel Township, issued a written decision on April 23, 1998, which set forth three reasons for the denial of the Conditional Use Certificate, one of which was "potential safety hazards."
In its review of the evidence in F H's Administrative Appeal, the Trial Court "conclude[d] that the board denied the application because of the evidence presented concerning traffic density problems, accidents in the area, the location of the development on a major highway curve, and its proximity to various events that intensify the traffic from time to time." Although the BZA did not specifically list these reasons as the basis for its decision, the Trial Court relied upon specific references in the Transcript which it opined would justify the decision of the BZA. (Tr. Vol. I, pg. 25, 31, 37, 45, and Vol. II, pg. 19-22).
In affirming the decision of the BZA the trial court made the following observations:
 There were two primary concerns raised about whether the inhabitants of the proposed lots would cause a traffic hazard. The first issue in this regard involves sight distance from the driveways to approaching traffic north and south. To alleviate the sight distance concerns expressed by the participants, the application was amended to reduce the six driveways to two that already exist. Mr. Cozatt's analysis concluded that the two driveways set forth in the application have better sight distance to traffic on the highway than the driveways of all of the existing residences except one in one direction. A written report of the findings was offered by Mr. Cozatt.
 The second traffic concern at issue involved whether the location of the development on a major curve on the State Highway 202 would create or exacerbate traffic safety in the area due to increased traffic density or congestion. There was adequate evidence offered that the board could reasonably conclude would justify this concern, such as evidence presented concerning traffic density, accidents in the area, the location of the development on a major highway curve, and its increased use by motorists when traveling to various events, some in proximity of a few miles to the curve, that greatly intensify the traffic from time to time. Volume 1 R0-25, 37-45 Volume 2 R-19-22. The Court notes that the Ohio Supreme Court held that denial of a conditional use permit to operate a child care center was reasonable, given evidence of traffic and related safety problems that would be exacerbated by the proposed use of the property even though the applicant satisfied the minimum requirements. Community Concerned Citizens, Inc. v. Union Township Board of Zoning Appeals, supra.
 It appears to the Court that all of the minimum requirements have been met by the applicant for issuance of the permit. Therefore, it concludes that the board denied the application because of the evidence presented concerning traffic density problems, accidents in the area, the location of the development on a major highway curve, and its proximity to various events that intensify the traffic from time to time.
 The decision of the board was apparently difficult as evidenced by the three to two vote denying the application. The Court is mindful that the board's denial of the application was an administrative decision now on appeal, and not a bench trial where the judge decides the case.
 The Court may not substitute its judgment for that of the board. It must affirm the board unless it finds that the decision of the Board is not supported by substantial, reliable, and probative evidence or is unconstitutional, illegal, arbitrary, capricious, or unreasonable. Therefore, the Court hereby affirm the decision of the Bethel Township Board of Zoning Appeals rendered June 18, 1998, by its letter issued June 25, 1998 which denied the third application for issuance of the Conditional Use Permit.
In its first assignment, F H argues the trial court committed reversible error when it affirmed the BZA relying on inadmissible hearsay evidence. We agree. The trial court noted in its decision that the BZA denied the application because of the "evidence presented" concerning traffic density problems, accidents in the area, and the heavy traffic related to specific special events in the surrounding area. This evidence was presented through the hearsay testimony of Larry Grazulis over the continuing objections of counsel.
In the case of In re Elizabeth Township Board of ZoningAppeals (Sept. 28, 1994), Miami App. 93-CA-62 unreported, this court held that an administrative body may not consider hearsay evidence in an arbitrary manner. Among the factors we considered on the arbitrariness issue was (1) whether any party objected to the hearsay, (2) whether both sides took advantage of liberalized evidentiary rules regarding hearsay, (3) whether the hearsay admitted carried an indicia of reliability, and (4) whether the board blindly accepted the accuracy of the hearsay evidence.
An additional factor that should be considered is whether the hearsay evidence concerns collateral matters or matters central to the outcome of the proceedings.
In this case counsel timely objected to the hearsay evidence. Both sides to this dispute did not liberally offer hearsay testimony. The hearsay evidence did not carry an indicia of reliability. The BZA apparently accepted Grazulis' hearsay testimony about the traffic considerations. Finally, the hearsay evidence concerned matters crucial to the BZA's denial of the conditional use permit. The assignment is well taken.
The judgment of the trial court will be Reversed and Remanded for further proceedings consistent with this opinion.
GRADY, P.J., and WOLFF J., concur.